# 24-1220

# United States Court of Appeals
# for the Second Circuit

GISSELLE VASQUEZ,

*Plaintiff-Appellant,*

v.

YONKERS PUBLIC SCHOOL DISTRICT, DR. EDWIN M. QUEZADA,
IN HIS PERSONAL CAPACITY AND PROFRESSIONAL CAPACITY,

*Defendants-Appellees,*

CITY OF YONKERS, ROBERT C. DODSON PUBLIC SCHOOL,
CESAR CHAVEZ PUBLUC SCHOOL, EVELINA MEDINA,
CHRISTOPHER CASSANO, SANDRA GUZMAN,

*Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANTS-APPELLEES

JOANNA M. TOPPING, ESQ.
ABRAMS FENSTERMAN, LLP
*Attorney for Defendants-Appellees*
81 Main Street, Suite 400
White Plains, New York 10601
(914) 607-7010
jtopping@abramslaw.com

2618

# Table of Contents

*Page*

Preliminary Statement ...........................................................................1

Counterstatement of the Issues ............................................................5

Counterstatement of the Case ..............................................................6

    A. Plaintiff receives a promotion ...................................................6

    B. Plaintiff files a Title IX complaint against one of the assistant
       principals at her school, Christopher Cassano, is granted a
       voluntary transfer, at her request, to a different school .......................6

    C. Plaintiff's job title, responsibilities, and work hours at her new
       school are substantially the same as those at her former school ..........8

    D. Plaintiff's Title IX complaint against Cassano is deemed founded ....10

    E. Plaintiff commences this action ................................................12

    F. Defendants move for summary judgment...............................13

    G. Plaintiff opposes defendants' motion for summary judgment...........15

    H. Defendants reply.........................................................................17

    I.  The District Court for the Southern District of New York grants
       defendants' motion for summary judgment ..........................................18

Standard of Review...............................................................................20

Summary of Argument .........................................................................22

i

Argument

I.   The District Court properly dismissed plaintiff's discrimination claim............................................................................................24

   A. Plaintiff has abandoned/waived most of the arguments and issues raised before the District Court, including any challenge to the District Court's determination that she could not prove the essential element of causality, which necessitates affirmance alone ..25

   B. The District Court properly concluded that plaintiff cannot establish that defendants' failure to investigate her complaints about Medina and Guzman was an adverse employment action.......28

II.   The District Court properly dismissed plaintiff's *Monell* claim ..........35

   A. The District Court properly determined that the dismissal of plaintiff's retaliation claims deprives plaintiff of the underlying constitutional violation to support her *Monell* claim ...........................36

   B. The District Court properly determined that Dr. Quezada was not acting as a "final policymaker" for YPSD ...............................................37

Conclusion.............................................................................................42

# TABLE OF AUTHORITIES

*Page(s)*

**Cases:**

*Agosto v. New York City Dep't of Educ.,*
    982 F.3d 86 (2d Cir. 2020) ......................................................35, 36, 37, 40, 41

*Ahmed v. Holder,*
    624 F.3d 150 (2d Cir. 2010) ..................................................................25, 26

*Burlington N. & Santa Fe Ry. Co. v. White,*
    548 U.S. 53 (2006) ..............................................................................29, 32, 35

*Carr v. New York City Transit Auth.,*
    76 F.4th 172 (2d Cir. 2023) ................................................................28, 29, 31

*Daniel v. ABM Indus., Inc.,*
    No. 16-CV-1300 (RA), 2017 WL 1216594 (S.D.N.Y. Mar. 31, 2017) ........34

*Fincher v. Depository Trust & Clearing Corp.,*
    604 F.3d 712 (2d Cir. 2010) .......................................................................19, 33

*Gottlieb v. County of Orange,*
    84 F.3d 511 (2d Cir. 1996) ...............................................................................27

*Hawkins v. Anheuser-Busch, Inc.,*
    517 F.3d 321 (6th Cir. 2008) .....................................................................33, 34

*Hughes v. Bricklayers & Allied Craftworkers Loc. No. 45,*
    386 F.3d 101 (2d Cir. 2004) .....................................................................25, 27

*Hurdle v. Bd. of Educ. of City of New York,*
    113 F. App'x 423 (2d Cir. 2004).....................................................................40

*In re Sears Holding Corp.,*
    51 F.4th 53 (2d Cir. 2022) ........................................................................25, 26

*Jeffes v. Barnes*,
  208 F.3d 49 (2d Cir. 2000) ....................................................38, 40

*JP Morgan Chase Bank v. Altos Hornos de Mex., S.A. de C.V.*,
  412 F.3d 418 (2d Cir. 2005) ..................................................25, 26

*Kessler v. Westchester Cnty. Dep't of Soc. Servs.*,
  461 F.3d 199 (2d Cir. 2006) ..................................................31, 32

*Kuhn v. United Airlines*,
  63 F. Supp. 3d 796 (N.D. Ill. 2014),
  *aff'd* 640 F. App'x 534 (7th Cir. 2016) ......................................34

*Lenzi v. Systemax, Inc.*,
  944 F.3d 97 (2d Cir. 2019) ..............................................24, 27, 28

*LoSacco v. City of Middletown*,
  71 F.3d 88 (2d Cir. 1995) ......................................................25, 27

*Monell v. Dep't of Social Servs.*,
  436 U.S. 658 (1978) .............................................................. *Passim*

*Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*,
  875 F.3d 107 (2d Cir. 2017) ......................................20, 21, 29, 30

*Norton v. Sam's Club*,
  145 F.3d 114 (2d Cir. 1998) ..................................................25, 27

*Pettaway v. Nat'l Recovery Sols., LLC*,
  955 F.3d 299 (2d Cir. 2020) ........................................................25

*Robinson v. Concentra Health Servs., Inc.*,
  781 F.3d 42 (2d Cir. 2015) ...........................................................21

*Rochon v. Gonzalez*,
  438 F.3d 1211 (D.C. Cir. 2006) ................................................33, 34

*Segal v. City of New York,*
   459 F.3d 207 (2d Cir. 2006) ...................................................................36, 37

*Spadaro v. U.S. Customs & Border Prot.,*
   978 F.3d 34 .........................................................................................................40

*Tepperwien v. Entergy Nuclear Operations, Inc.,*
   663 F.3d 556 (2d Cir. 2011) .........................................................................32

*Vega v. Hempstead Union Free School Dist.,*
   801 F.3d 72 (2d Cir. 2015) ............................................................................24

## Rules, Laws & Statutes:

42 U.S.C. § 1983 .........................................................................................2, 24

Fed. R. App. P. 28(a)(7)-(8) .............................................................25, 27

Fed. R. Civ. P. 56(a) .............................................................................21

N.Y. Educ. Law § 2554 ........................................................................38, 39

N.Y. Educ. Law § 2556 ........................................................................38, 39

N.Y. Educ. Law § 2566 ....................................................................38, 39, 41

N.Y. Educ. Law § 2590-h ....................................................................41

Title VII of the Civil Rights Act of 1964 ...............................................24

## PRELIMINARY STATEMENT

Since 2013, plaintiff-appellant Gisselle Vasquez ("plaintiff") has been employed by defendants-appellee Yonkers Public School District ("YPSD"), of which Dr. Edwin M. Quezada ("Dr. Quezada") (YPSD and Dr. Quezada, collectively, "defendants") is the superintendent. Throughout her career, plaintiff has worked at Saunders Trade and Technical High School ("Saunders"), Dodson Public School ("Dodson"), and Cesar Chavez Public School ("Cesar").

On April 11, 2019, while working at Dodson, plaintiff filed a written Title IX complaint against her co-worker, Christopher Cassano, alleging that he engaged in sexually harassing behavior toward her in March 2019. Plaintiff's Title IX complaint did not mention any discriminatory conduct by anyone else. In response, Dr. Quezada immediately transferred Cassano out of Dodson.

Later in 2019, plaintiff informed her union representative, who was not employed by YPSD, that she wanted to be transferred out of Dodson because two of her co-workers, Evelina Medina ("Medina") and Sandra Guzman ("Guzman"), purportedly engaged in sexually harassing behavior toward

her between May 2018 and September 2018. Plaintiff never filed a Title IX complaint or any other formal complaint against Medina or Guzman. Plaintiff's union representative relayed plaintiff's desire for a transfer to Dr. Quezada, who said that plaintiff should email him a transfer request. Accordingly, on April 17, 2019, plaintiff sent Dr. Quezada an email, requesting that she be transferred to a different school because she was "extremely uncomfortable" at Dodson. Plaintiff's email did not mention Medina or Guzman, elaborate on what made her uncomfortable, or request that any other action be taken. That same day, Dr. Quezada processed plaintiff's request. A few days later, on April 23, 2019, plaintiff was voluntarily transferred, at her request, from Dodson to Cesar.

In June 2019, plaintiff's Title IX complaint against Cassano was deemed founded. During and after the investigation of plaintiff's Title IX complaint, between April 25, 2019 and November 19, 2019, plaintiff continued to voice concerns about the unlawful conduct of her co-workers on at least three separate occasions.

In May 2021, plaintiff commenced this action against defendants, alleging, as is relevant here, one claim for retaliation under 42 U.S.C. § 1983 ("retaliation claim"), and one claim for liability under *Monell v. Dep't of Social*

2

*Servs.*, 436 U.S. 658 (1978) ("*Monell* claim"). The retaliation claim was based, in pertinent part, on the allegation that plaintiff suffered a materially adverse employment action in the form of Dr. Quezada failing to investigate the complaints that she had voiced to her union representative about Medina and Guzman in the context of her transfer request. The *Monell* claim was predicated on the retaliation claim and based, in pertinent part, on the allegation that Dr. Quezada was a "final policymaker" for YPSD.

The District Court for the Southern District of New York granted defendants' motion for summary judgment dismissing plaintiff's retaliation claim and *Monell* claim. That was proper and should be affirmed for three reasons.

*First*, plaintiff has conceded that the District Court properly determined that she is unable to establish an essential element of her retaliation claim and an essential element of her *Monell* claim. An essential element of plaintiff's retaliation claim is causality between her engagement in protected activity and her suffering an adverse employment action. The District Court determined that plaintiff cannot establish causality as a matter of law. Plaintiff does not challenge that determination on appeal and therefore has conceded that issue, necessitating the affirmance of the

3

dismissal of her retaliation claim. Relatedly, an essential element of plaintiff's *Monell* claim is the deprivation of plaintiff's constitutional rights. Because plaintiff's *Monell* claim is predicated on plaintiff's retaliation claim, which plaintiff has conceded was properly dismissed, plaintiff's *Monell* claim must be dismissed because there is no underlying constitutional violation to support it.

*Second*, in regard to the retaliation claim, and setting aside plaintiff's concession on causality, the District Court properly determined that plaintiff could not prove another essential element of her retaliation claim: that she suffered a materially adverse employment action. Dr. Quezada's failure to investigate plaintiff's complaints about Medina and Guzman following plaintiff's filing of the Title IX complaint did not constitute a material adverse employment action because, under the circumstances, the failure to investigate would not dissuade a reasonable employee from complaining about unlawful conduct. Indeed, that proved to be the case here because, despite the lack of investigation into Medina and Guzman, it is undisputed that plaintiff continued to complain about unlawful conduct, including conduct by Medina and Guzman.

*Third*, in regard to the *Monell* claim, and even assuming plaintiff could

establish a predicate constitutional deprivation, the District Court properly determined that plaintiff could not establish another essential element of her *Monell* claim: that Dr. Quezada was a "final policymaker" for YPSD when it came to investigating claims of unlawful conduct. The New York Education Law makes clear that the Board of Education, not the superintendents of schools, such as Dr. Quezada, is the final policymaker for YPSD when it comes to investigations.

## COUNTERSTATEMENT OF THE ISSUES

(1) Whether the District Court correctly granted defendants' motion for summary judgment dismissing plaintiff's retaliation claim, because plaintiff cannot establish as a matter of law that she suffered an adverse employment action, and that, even if she did, such adverse employment action was causally related to her engagement in protected activity.

(2) Whether the District Court correctly granted defendants' motion for summary judgment dismissing plaintiff's *Monell* claim, because plaintiff cannot establish as a matter of law that she suffered a deprivation of her constitutional rights, and that, even if she did, such deprivation was caused by a policy or custom of YPSD.

### COUNTERSTATEMENT OF THE CASE

Saunders Trade and Technical High School ("Saunders"), Dodson Public School ("Dodson"), and Cesar Chavez Public School ("Cesar") are all schools within YPSD. A. 1127, 1261. At all relevant times, plaintiff was employed by YPSD at one of those schools, and Dr. Quezada served as the superintendent of YPSD. A. 1127, 1261.

### A. Plaintiff receives a promotion.

Beginning in September 2013, plaintiff was a "School Aide" at Saunders. A. 118-119, 1128, 1163. In April 2016, plaintiff was promoted to "Clerk I-Spanish Speaking" and assigned to work at Dodson. A. 117-118, 1128-1129, 1163.

### B. Plaintiff files a Title IX complaint against one of the assistant principals at her school, Christopher Cassano, is granted a voluntary transfer, at her request, to a different school.

According to plaintiff, while working at Dodson: (1) the principal, Evelina Medina ("Medina"), engaged in sexually harassing behavior toward her on several occasions between May 2018 and September 2018; (2) one of the assistant principals, Sandra Guzman ("Guzman"), participated in some of those harassing behaviors; and (3) another assistant principal, Christopher Cassano ("Cassano"), engaged in sexually harassing behavior toward her in

March 2019. A. 1129-1130, 1264-1265.

On April 10, 2019, plaintiff complained to Medina about Cassano's conduct. A. 1130, 1265. On April 11, 2019, plaintiff filed a written Title IX complaint against Cassano with the City of Yonkers' Human Resources Department, which is tasked with handling YPSD's human resources issues; the Title IX complaint *did not mention Medina or Guzman*. A. 942-943, 1130, 1265, 1267. The next day, April 12, 2019, Dr. Quezada transferred Cassano out of Dodson in response to plaintiff's Title IX complaint, and plaintiff spoke about her Title IX complaint with the Equal Opportunity Employment Coordinator for YPSD, Robert Voorheis, who is employed by the City of Yonkers and is designated by YPSD's Title IX policy as the person who handles and investigates Title IX complaints. A. 1130, 1265-1267, 1299.

Later in April 2019, plaintiff spoke to the President of the Civil Service Employees Association Union, Lionel Turner ("Turner"), and asked to be transferred out of Dodson because the purported behavior by Medina and Guzman made her uncomfortable and she did not want to be around them. A. 157, 175-177, 1131, 1267-1268. Turner relayed plaintiff's desire for a transfer to Dr. Quezada, who told Turner to have plaintiff email him a transfer request. A. 405-410, 424-425, 904-911, 920, 922, 1131, 1267-1268, 1310.

7

Accordingly, on April 17, 2019, plaintiff sent Dr. Quezada an email, requesting that she be transferred to a different school because she was "extremely uncomfortable" at Dodson; plaintiff's email *did not mention Medina or Guzman, elaborate on what made her uncomfortable, or request that any other action be taken*. A. 949, 1131, 1267-1268. That same day, Dr. Quezada: (1) sent to responsive email to plaintiff that said, "Thank you"; and (2) sent an email to the City of Yonkers' Deputy Commissioner of Human Resources, Theresa Forget ("Forget"), who was assigned to oversee YPSD's human resource functions, asking her to effectuate plaintiff's requested transfer on April 23, 2019, after the upcoming holiday break for Easter. A. 948, 950, 1131, 1268, 1311. Forget, in turn, effectuated plaintiff's transfer request. A. 952.

On April 23, 2019, plaintiff was voluntarily transferred, at her request, from Dodson to Cesar. A. 950, 1127, 1129, 1131, 1261, 1263, 1268, 1311. Plaintiff did not have any contact with Medina after her transfer. A. 1302.

### C. Plaintiff's job title, responsibilities, and work hours at her new school are substantially the same as those at her former school.

Plaintiff's former school, Dodson, and new school, Cesar, contain the same age groups of students—pre-kindergarten through eighth grade—and operate during the same ten-month period. A. 117, 1128-1129, 1261-1263.

8

Upon her transfer to Cesar, plaintiff maintained the same job title, "Clerk I-Spanish Speaking," and salary that she had at Dodson. A. 117, 1127, 1129, 1261, 1264. Plaintiff subsequently received all pay increases and benefits to which she was entitled while at Cesar. A. 1129, 1264.

At Dodson, plaintiff's work hours were 7:30 a.m. to 3:00 p.m. A. 117-118, 1128, 1162. At Cesar, plaintiff had similar work hours, 8:30 a.m. to 4:30 p.m., when she started. A. 117-118, 1128, 1162. After her first week at Cesar, however, plaintiff requested to change her work hours due to childcare needs. A. 117-118, 1128, 1162. Within the same week of making that request, plaintiff's hours were changed to 8:00 a.m. to 3:30 p.m. to accommodate her needs. A. 117-118, 1128, 1162.

At Cesar, plaintiff's duties included translating and handling clerical duties, such as, among other things, report cards, progress reports, late passes, absences, notices from parents, emails, phone calls, and scheduling. A. 117, 1128, 1162. Those duties are consistent with the formal job description for someone employed as "Clerk I-Spanish Speaking." A. 955-956, 1128, 1162. Moreover, the job description of the positions of "Clerk I-Spanish Speaking" and "Clerk I-Data" are identical, with the only difference being that the former is required to speak Spanish and translate. A. 955-958, 1128,

9

1162-1163.

### D. Plaintiff's Title IX complaint against Cassano is deemed founded.

On April 25, 2019, while her Title IX complaint against Cassano was pending and being investigated by Voorheis, plaintiff asked Forget if she could meet the next day, April 26, 2019, to "share some information" about an unspecified topic. A. 960, 1132, 1268, 1312-1313. Forget responded later that day, explaining that she was not available on April 26, 2019 and asked whether another employee from the City of Yonkers' Human Resources Department could assist. A. 960-961, 1132, 1268-1269, 131. On April 26, 2019, after having an impromptu discussion with Voorheis in which she complained to him that she believed her Title IX complaint about Cassano had been made available to other employees at Dodson, plaintiff sent a reply email to Forget, stating that she was able to speak with Voorheis, and that she would contact Forget if she needed anything else. A. 960, 1132, 1268, 1313.

On May 21, 2019, plaintiff sent a letter to Voorheis, without copying Dr. Quezada or any other employee of YPSD, asking about the status of her Title IX complaint and stating that she would like to inform him of other unspecified "information" that she "feel[s] safe addressing" because she no

longer works at Dodson. A. 963, 1132, 1269. Voorheis believed that plaintiff was referencing information about Cassano, as he was the only subject of her Title IX complaint, and did not believe that additional information was necessary because Cassano had already admitted to engaging in the alleged conduct by that point. A. 752-753.

On June 10, 2019, Voorheis completed his investigation, deemed plaintiff's Title IX complaint against Cassano founded, and drafted a report to that effect. A. 1132, 1269, 945-946. However, Voorheis never informed plaintiff that he had completed his investigation and deemed her Title IX complaint founded—Voorheis deemed his failure to inform plaintiff of the outcome of her Title IX an oversight. A. 1316-1317. Later in June 2019, Voorheis provided a copy of his report to Dr. Quezada. A. 1132-1133, 1269-1270. Dr. Quezada was unaware that Voorheis had not informed plaintiff of the outcome of her Title IX complaint. A. 1133, 1270.

On November 19, 2019, unaware that Voorheis had completed his investigation and issue his report, plaintiff sent a letter to Voorheis, without copying Dr. Quezada or any other employee of YPSD, stating that she would like to inform him of additional "information," including proof that Cassano had apologized for engaging in sexually harassing behavior, as well as

unspecified "information" relating to Medina and Guzman. A. 964, 1132-1133, 1270. On November 21, 2019, Voorheis sent plaintiff a responsive email, advising her that her Title IX complaint against Cassano had been deemed founded and therefore was closed. A. 965.

### E. Plaintiff commences this action.

In May 2021, plaintiff commenced this action. A. 17-41. As is relevant here, plaintiff's complaint asserted two claims against defendants: (1) retaliation under 42 U.S.C. § 1983 ("retaliation claim"); and (2) liability under *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978), predicated on the retaliation claim ("*Monell* claim"). A. 29-31.[1]

To support the retaliation claim, the complaint alleged that: (1) plaintiff engaged in the protected activity of filing a Title IX complaint against Cassano; (2) plaintiff suffered materially adverse employment actions in the form of (a) being transferred to Cesar, (b) Dr. Quezada failing to properly investigate her complaints against Cassano, Medina, and Guzman, and (c) YPSD officials providing her with delayed notification of

---

[1] The complaint asserted other claims against various defendants, but those claims have since been dismissed and are not the subject of this appeal. A. 17-41, 1325. Accordingly, the only claims that will be discussed are the two claims referenced in main text, which are the only claims subject to this appeal.

the outcome of her Title IX complaint; and (3) there was a causal connection between her engagement in protected activity and her materially adverse employment action. A. 24-30.

To support the *Monell* claim, which was predicated on the retaliation claim, the complaint alleged that: (1) Dr. Quezada was a final decision and policymaker for YPSD; (2) Dr. Quezada failed to follow up on plaintiff's complaints about Cassano, Medina, and Guzman; and (3) Dr. Quezada's failure amounted to unconstitutional retaliatory conduct. A. 24-31.

### F. Defendants move for summary judgment.

In July 2023, defendants jointly moved for summary judgment dismissing plaintiff's claims against them. A. 60-1126.[2] To support their motion, plaintiffs submitted, among other things: (1) plaintiff's complaint; (2) the deposition transcripts of, among others, plaintiff, Dr. Quezada, Voorheis, Turner, and Foget; (3) plaintiff's Title IX complaint; (4) Voorheis' report on plaintiff's Title IX complaint; (5) emails and letters between and among plaintiff, Dr. Quezada, Voorheis, Forget, and Turner; (6) official YPSD documents, including non-discrimination and equal opportunity

---

[2] Defendants filed their joint answer in February 2022. A. 42-59.

policies, and codes of conduct; and (7) a statement of material facts pursuant to Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York. A. 66-1101, 1127-1133. The substance of those materials is summarized above. *See* Statement of Facts, Parts A-E, *supra*.

Defendants argued that the retaliation claim should be dismissed for two principal reasons. A. 1115-1123. First, defendants argued that plaintiff did not suffer a materially adverse employment action as a matter of law because: (1) her transfer to Cesar was voluntary and resulted in her having a position that was not substantially different from her position at Dodson; and (2) defendants' alleged failure to adequately investigate plaintiff's complaints against Cassano, Medina, and Guzman, as well as defendants' failure to promptly inform plaintiff of the favorable decision on her Title IX complaint, did not result in any demonstrable harm that worsened the conditions of plaintiff's employment or otherwise adversely affected plaintiff. A. 1115-1118. Second, defendants argued that, even if plaintiff suffered a materially adverse employment action, there was no causal connection between that materially adverse employment action and plaintiff's engagement in protected activity of filing the Title IX complaint

14

against Cassano. A. 1118-1123.

Defendants argued that the *Monell* claim should also be dismissed for two principal reasons. A. 1123-1125. First, defendants argued that plaintiff cannot demonstrate a deprivation of a constitutional right because her retaliation claim, which serves as the predicate for her *Monell* claim, should be dismissed for the reasons stated. A. 1123. Second, defendants argued that, even if plaintiff could demonstrate a deprivation of a constitutional right based on the retaliation claim, plaintiff cannot demonstrate that such deprivation was caused by a policy or custom of YPSD because Dr. Quezada is not a final policymaker for YPSD, insofar as YPSD's Board of Education makes all final determinations regarding policy. A. 1124-1125.

### G. Plaintiff opposes defendants' motion for summary judgment.

Plaintiff opposed defendants' motion for summary judgment. A. 1136-1279. To support its opposition, plaintiff submitted, among other things, the same deposition transcripts that defendants submitted in support of their motion, as well as her own statement of material facts pursuant to Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York. A. 1138-1235, 1261-1279.

Plaintiff argued that her retaliation claim should not be dismissed

15

because, among other things, she demonstrated the existence of triable issues of fact as to whether she suffered an adverse employment action, and whether there was a causal connection between that adverse employment action and her participation in protected activity. A. 1249-1256. As to adverse employment action, plaintiff maintained that: (1) her transfer to Cesar was a materially adverse employment action; (2) defendants' failure to investigate her complaints against Cassano, Medina, and Guzman constituted a materially adverse employment action because it dissuaded her from making further complaints; and (3) YPSD's failure to promptly inform her of the favorable decision on her Title IX complaint constituted a materially adverse employment action because it dissuaded her from making further complaints. A. 1251-1254. As to causation, plaintiff maintained that the temporal proximity between her protected activity and her purported adverse employment action "shows a causal connection." A. 1254-1256.

Plaintiff argued that her *Monell* claim should not be dismissed because she has raised an issue of fact as to whether a municipal policy or custom caused her to be deprived of her constitutional rights. A. 1256-1260. As to constitutional deprivation, plaintiff maintained that she demonstrated the existence of a triable issue of fact on her retaliation claim for the reasons

16

stated. A. 1259-1260. As to causation, plaintiff maintained that her constitutional deprivation was the result of municipal policy or custom because Dr. Quezada, as superintendent, was a final policymaker for YPSD and decided not to investigate her complaints. A. 1257-1260.

**H. Defendants reply.**

In reply, defendants submitted a supplemental statement of material facts pursuant to Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York. A. 1295-1318.

To further support their motion for summary judgment dismissing plaintiff's retaliation claim, defendants argued that: (1) plaintiff's transfer to Cesar was not an adverse employment action because it was voluntary and substantially similar to her previous position at Dodson; (2) the delay in informing plaintiff of the favorable result of her Title IX complaint was not an adverse employment action because Dr. Quezada indisputably had no involvement in this conduct and, in any event, it had no negative impact on plaintiff; (3) the purported failure to investigate plaintiff's complaints was not an adverse employment action because Dr. Quezada took swift action in response to plaintiff's only formal complaint, insofar as he transferred Cassano out of Dodson based on plaintiff's Title IX complaint and then

17

granted plaintiff's voluntary transfer request, and the purported failure to investigate had no negative impact on plaintiff in any event; and (4) even if plaintiff suffered an adverse employment action, the temporal proximity between her protected activity and that adverse action alone is insufficient to establish causality as a matter of law. A. 1284-1291.

To further support their motion for summary judgment dismissing plaintiff's *Monell* claim, defendants argued that, even if plaintiff was the victim of unconstitutional retaliatory conduct as a result of Dr. Quezada's purported failure to investigate her complaints, plaintiff cannot establish that such unconstitutional conduct occurred as a result of municipal policy or custom because the Board of Education was the final policymaker for YPSD, not Dr. Quezada. A. 1291-1293.

## I. The District Court for the Southern District of New York grants defendants' motion for summary judgment.

The District Court for the Southern District of New York granted defendants' motion for summary judgment. A. 1319-1343.

The Court dismissed plaintiff's retaliation claim based on its determination that plaintiff could not establish that she suffered a materially adverse employment action or that there was a causal connection between

her protected activity and any alleged adverse employment action. A. 1328-1335. First, the Court held that plaintiff's transfer to Cesar cannot be considered an adverse employment action because it was voluntary and plaintiff's job title, responsibilities, and work hours were substantially the same as what they were at Dodson. Second, to the extent that plaintiff was alleging that defendants' purported failure to investigate her complaints about Medina and Guzman was retaliation for her making those same complaints, the Court, citing and quoting *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712 (2d Cir. 2010), held that "'an employer's failure to investigate a complaint of discrimination cannot be considered an adverse employment action taken in retaliation for the filing of the same discrimination complaint.'" A. 1331-1332. Third, to the extent that plaintiff was alleging that defendants' purported failure to investigate her complaints about Medina and Guzman was retaliation for her filing a Title IX complaint against Cassano, the Court held that the failure to investigate could not be considered an adverse employment action because the evidence demonstrated that plaintiff did not suffer any harm as a result of the alleged lack of investigation and continued to make further complaints after the alleged lack of investigation. A. 1332-133. Fourth, the Court held that the

19

delay in informing plaintiff of the favorable outcome of her Title IX complaint cannot be considered an adverse employment action because there is no reasonable way to view this conduct as being likely to dissuade a reasonable worker from making future complaints. A. 1334-1335.

The Court dismissed plaintiff's *Monell* claim based on its determination that plaintiff could not establish a deprivation of her constitutional rights or that a municipal policy or custom caused plaintiff to suffer any alleged deprivation of her constitutional rights. A. 1335-1342. As is relevant here, the Court held that: (1) the dismissal of plaintiff's retaliation, which was the predicate for plaintiff's *Monell* claim, means that plaintiff cannot establish a deprivation of her constitutional rights; and (2) plaintiff cannot establish any municipal policy or custom that caused her to suffer any alleged deprivation of her constitutional rights because the Board of Education was YPSD's final policymaker, not Dr. Quezada. A. 1336-1342.

Plaintiff appeals. A. 1344.

## STANDARD OF REVIEW

This Court reviews the District Court's "grant of summary judgment de novo." *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d

Cir. 2017).

Summary judgment should be granted if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where, as here, the burden of persuasion at trial is on the non-moving party, the movant can satisfy their burden on summary judgment "in either of two ways: (1) by submitting evidence that negates an essential element of the non-moving party's claim, or (2) by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim." *Nick's Garage, Inc.*, 875 F.3d at 114 (internal quotation marks omitted). Upon the movant's satisfaction of that burden, the non-moving party can avoid summary judgment only by "com[ing] forward with specific evidence demonstrating the existence of a genuine dispute of material fact," which requires more than "some metaphysical doubt as to the material facts" or "conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (internal quotation marks omitted).

## SUMMARY OF ARGUMENT

There are four independent reasons that this Court should affirm the District Court's grant of defendants' motion for summary judgment dismissing plaintiff's retaliation claim and *Monell* claim.

*First*, plaintiff has conceded that the District Court properly determined that she is unable to establish an essential element of her retaliation claim. An essential element of plaintiff's retaliation claim is causality between her engagement in protected activity and her suffering an adverse employment action. The District Court determined that plaintiff cannot establish causality as a matter of law. Plaintiff does not challenge that determination on appeal and therefore has conceded that issue. Plaintiff's admission of her inability to establish an essential element of her retaliation claim necessitates affirmance of the dismissal of that claim.

*Second*, plaintiff's only appellate argument regarding her retaliation claim, that the District Court erred in determining that defendants' failure to investigate her complaints about Medina and Guzman following her filing the Title IX complaint against Cassano is not a material adverse employment action, is meritless. The law demonstrates that plaintiff did not suffer a material adverse employment action as a matter of law because, based on

the undisputed factual circumstances here, no reasonable employee in plaintiff's position would have been dissuaded from complaining of unlawful discrimination based on defendants' failure to investigate plaintiff's complaints about Medina and Guzman.

*Third*, the dismissal of plaintiff's *Monell* claim was proper because that claim was predicated on plaintiff's properly dismissed retaliation claim. An essential element of plaintiff's *Monell* claim is the deprivation of plaintiff's constitutional rights. Because plaintiff's *Monell* claim is predicated on plaintiff's properly dismissed retaliation claim, plaintiff's *Monell* claim must be dismissed because there is no underlying constitutional violation to support it.

*Fourth*, even if plaintiff could demonstrate a constitutional deprivation, the dismissal of her *Monell* claim was nevertheless proper because Dr. Quezada was not a "final policymaker." An essential element of plaintiff's *Monell* claim is that plaintiff's underlying constitutional violation was the result of "a municipal policy or custom," which, as is relevant here, required plaintiff to demonstrate that Dr. Quezada was acting as a "final policymaker" for YPSD. New York State law makes clear, however, that the Board of Education, not Dr. Quezada, is the "final policymaker" for YPSD.

ARGUMENT

I

**The District Court properly dismissed plaintiff's discrimination claim**

A claim for retaliation under 42 U.S.C. § 1983 is analyzed under the same standard as a claim for retaliation under Title VII of the Civil Rights Act of 1964. *See Vega v. Hempstead Union Free School Dist.*, 801 F.3d 72, 81-88 (2d Cir. 2015). That standard requires a plaintiff asserting a claim for retaliation to make a four-part showing of: "(1) [their] participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 112 (2d Cir. 2019).

The District Court properly held that plaintiff could not establish the elements of adverse employment action and causality. A. 1328-1335. On appeal, plaintiff *does not challenge* the District Court's determination regarding causality. *See* Plaintiff Brf. at 9-18. Plaintiff's failure constitutes an admission that the District Court properly determined that she was unable to establish an essential element of her retaliation claim, which requires affirmance of the District Court's judgment. Affirmance is also required

24

because, contrary to plaintiff's only argument on appeal regarding her retaliation claim, *see* Plaintiff Brf. at 9-18, the District Court properly determined that defendants' failure to investigate her complaints about Medina and Guzman following her filing the Title IX complaint against Cassano did not constitute an adverse employment action as a matter of law.

### A. Plaintiff has abandoned/waived most of the arguments and issues raised before the District Court, including any challenge to the District Court's determination that she could not prove the essential element of causality, which necessitates affirmance alone.

An appellant, such as plaintiff, abandons/waives a claim or issue on appeal by not raising it in their opening brief. *See In re Sears Holding Corp.*, 51 F.4th 53, 65 (2d Cir. 2022); *Ahmed v. Holder*, 624 F.3d 150, 153 (2d Cir. 2010); *JP Morgan Chase Bank v. Altos Hornos de Mex., S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005); *Hughes v. Bricklayers & Allied Craftworkers Loc. No. 45*, 386 F.3d 101, 104 n.1 (2d Cir. 2004); *Norton v. Sam's Club*, 145 F.3d 114, 117-118 (2d Cir. 1998); *LoSacco v. City of Middletown*, 71 F.3d 88, 92 (2d Cir. 1995); *see generally* Fed. R. App. P. 28(a)(7)-(8). That abandonment/waiver cannot be cured by raising the claim or issue for the first time in a reply brief. *See Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 305 n.2 (2d Cir. 2020); *Norton*, 145 F.3d at 117.

Plaintiff's opening brief *contains only one argument* relating to her retaliation claim: contrary to the District Court's determination, defendants' failure to investigate her complaints about Medina in Guzman following her filing the Title IX complaint against Cassano was an adverse employment action. Plaintiff Brf. at 9-18. Indeed, plaintiff's opening brief *does not contain* any arguments challenging the District Court's determinations regarding her inability to establish that: (1) her voluntary transfer from Dodson to Chavez was an adverse employment action; (2) the failure to timely inform her of the favorable outcome of her Title IX complaint was an adverse employment action; (3) the failure to investigate her complaints about Medina and Guzman as purported retaliation for her filing of those same complaints was an adverse employment action; or (4) there was no causal connection between her protected activity and any alleged adverse employment action. *See* Plaintiff Brf. at 9-18.

Plaintiff has therefore waived/abandoned any appellate argument or challenge to those determinations. *See In re Sears Holding Corp.*, 51 F.4th at 65 ("a party's failure to press an argument in its opening brief generally precludes our review of that issue"); *Ahmed*, 624 F.3d at 153 ("Issues not briefed on appeal are considered abandoned"); *JP Morgan Chase Bank*, 412

F.3d at 428 ("arguments not made in an appellant's opening brief are waived even if the appellant pursued those arguments in the district court or raised them in a reply brief"); *Hughes*, 386 F.3d at 104 n.1 ("[appellants] have abandoned certain claims advanced below by not raising them in their brief to this Court"); *Norton*, 145 F.3d at 117-118 ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal"); *LoSacco*, 71 F.3d at 92 ("[appellant] did not raise this issue in his appellate brief," and, "[c]onsequently, he has abandoned it"); *see generally* Fed. R. App. P. 28(a)(7)-(8) (requiring that an appellant's brief include all "argument[s]" and "issue[s]" being raised).

Critically, plaintiff's waiver/abandonment of the causality issue is fatal to her appeal. As noted, a material element of plaintiff's retaliation claim is "a causal connection between [her] protected activity and [her] adverse employment action." *Lenzi*, 944 F.3d at 112. By failing to challenge on appeal the District Court's determination that she cannot establish causality, plaintiff has conceded the merits of that determination and, thus, that summary judgment was properly granted because of her inability to prove an essential element of her claim. *See Gottlieb v. County of Orange*, 84 F.3d 511, 519 (2d Cir. 1996) ("If the undisputed facts reveal that there is an

absence of sufficient proof as to any essential element on which the opponent of summary judgment has the burden of proof, any factual dispute with respect to other elements becomes immaterial and cannot defeat the motion").

The District Court's dismissal of plaintiff's retaliation claim should be affirmed on this ground alone and the analysis should end here.

**B. The District Court properly concluded that plaintiff cannot establish that defendants' failure to investigate her complaints about Medina and Guzman was an adverse employment action.**

As noted, an essential element of plaintiff's retaliation claim is that she suffered "an adverse employment action." *Lenzi*, 944 F.3d at 112. To that end, as just discussed, *see* Point I.A, *supra*, the only argument advanced by plaintiff on appeal is that defendants' failure to investigate her complaints about Medina in Guzman following for her filing the Title IX complaint against Cassano was an adverse employment action. Plaintiff Brf. at 9-18. In addition to being academic for the reasons just stated, *see* Point I.A, *supra*, plaintiff's argument is meritless.

An adverse employment action for purposes of a retaliation claim must be "materially adverse." *Carr v. New York City Transit Auth.*, 76 F.4th 172, 180 (2d Cir. 2023). "[A] 'materially adverse' action is one that 'well might

have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). That standard is an "objective" one that turns upon the "particular circumstances" and "context" of each case. *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68-69.

Applying that standard, and even accepting her allegations as true, *see Nick's Garage, Inc.*, 875 F.3d at 113, plaintiff is utterly incapable of demonstrating as a matter of law that defendants' supposed failure to investigate her complaints against Medina and Guzman following her Title IX complaint against Cassano was a "materially adverse" employment action. *Carr*, 76 F.4th at 180.

The relevant facts are straightforward. On April 11, 2019, plaintiff filed her Title IX complaint against Cassano, and, the next day, Dr. Quezada transferred Cassano to a different school. A. 942-943, 1130, 1265-1267, 1299. Later that month, plaintiff told Turner, the President of the Civil Service Employees Association Union, that she wanted to be transferred to a different school because the behavior by Medina and Guzman made her uncomfortable and she did not want to be around them—plaintiff *did not* file a written complaint against Medina or Guzman or otherwise request an

29

investigation into Medina or Guzman. A. 157, 175-177, 1131, 1267-1268. Turner relayed plaintiff's desire for a transfer and the rationale for it to Dr. Quezada,[3] who told Turner to have plaintiff email him a transfer request. A. 405-410, 424-425, 904-911, 920, 922, 1131, 1267-1268, 1310. On April 17, 2019, plaintiff sent Dr. Quezada an email, requesting that she be transferred to a different school because she was "extremely uncomfortable"—plaintiff *did not* mention Medina or Guzman, elaborate on what made her uncomfortable, or request that any other action be taken. A. 949, 1131, 1267-1268. That same day, Dr. Quezada processed plaintiff's transfer request, which was effectuated days later, on April 23, 2019. A. 948, 950, 952, 1127, 1129, 1131, 1261, 1263, 1268, 1311. After her transfer, plaintiff expressed to Forget and Voorheis, who were employed by the City of Yonkers, but not to Dr. Quezada or any other YPSD employee, her desire to come forward and make additional complaints, some of which related to Medina and Guzman and

---

[3] Turner testified that he informed Dr. Quezada that the rationale for plaintiff's transfer request related to the conduct of Medina and Guzman. A. 904-911. By contrast, Dr. Quezada testified that Turner told him that the rationale for plaintiff's request was something different that had nothing to do with Medina or Guzman. A. 405-407, 424. Because all facts must be viewed in the light most favorable to plaintiff, *see Nick's Garage, Inc.*, 875 F.3d at 113, it is assumed that Turner informed Dr. Quezada of the rationale for plaintiff's request. As will be discussed in main text, however, this is of no moment.

others of which did not, on at least three separate occasions. A. 960, 963-964, 1132-1133, 1268-1270, 1312-1313.

Against that backdrop, it cannot possibly be said that plaintiff suffered a "materially adverse" employment action. *Carr*, 76 F.4th at 180.

To start, there is no dispute that Dr. Quezada took immediate action to protect plaintiff by transferring Cassano, A. 942-943, 1130, 1265-1267, 1299, then immediately took the specific action requested by plaintiff. Plaintiff requested only a transfer to a different school; she did not request that Dr. Quezada or any YPSD employee take any other action against anyone, including Medina or Guzman. A. 949, 1131, 1267-1268. Dr. Quezada processed plaintiff's request the same day, and plaintiff's request was effectuated a few days later. A. 948, 950, 952, 1127, 1129, 1131, 1261, 1263, 1268, 1311. Under these circumstances—your superior transferring your harasser to a different school and instantly taking the precise action that you requested—no "reasonable employee" in plaintiff's "position" would have been "dissuaded . . . from complaining of unlawful discrimination." *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 209 (2d Cir. 2006).

And this proved to be true. After plaintiff's transfer, and despite the lack of investigation into her complaints about Medina and Guzman,

plaintiff voiced concerns about the actions of Medina, Guzman, and others to Forget and Voorheis on at least three separate occasions. A. 960, 963-964, 1132-1133, 1268-1270, 1312-1313. Plaintiff's continued complaints in the face of the lack of an investigation is strong proof that a reasonably objective employee would not be "dissuaded . . . from complaining of unlawful discrimination." *Kessler*, 461 F.3d at 209; *see Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 572 (2d Cir. 2011) ("Viewing all of the actions in the aggregate, we conclude that a reasonable employee in [plaintiff]'s situation would not have been deterred from engaging in protected activities. Indeed, while the test is an objective one, it is relevant that [plaintiff] himself was not deterred from complaining—he complained numerous times").

Indeed, given the context and particular circumstances of this case, it cannot possibly be said that this case presents one of the rare, egregious scenarios where the failure to investigate a complaint in response to a separate complaint constitutes a material adverse employment action. *See Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 69 (noting that determining whether an employee has suffered a material adverse employment action "depend[s] upon the particular circumstances," in which "[c]ontext

matters"); *see generally Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 722 (2d Cir. 2010) ("We do not mean to suggest that failure to investigate a complaint cannot ever be considered an adverse employment action for purposes of a retaliation claim. It can be if the failure is in retaliation for some separate, protected act by the plaintiff"). There have been two extraordinary cases in which an employer's failure to investigate an employee's complaints of serious violence against them have been deemed a material adverse employment action, based on the rationale that a reasonable employee would be dissuaded from engaging in protective activity if they knew that doing so would leave them unprotected by their employer in the face of threats of violence. *See Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 349 (6th Cir. 2008); *Rochon v. Gonzalez*, 438 F.3d 1211, 1219-1220 (D.C. Cir. 2006). But both of those cases are readily distinguishable from this case.

First, the D.C. Circuit Court of Appeals concluded that the failure of the Federal Bureau of Investigation ("FBI") to investigate an agent's complaint about a death threat made against the agent and his wife that followed the agent's complaint of discrimination was a materially adverse employment action. *See Rochon*, 438 F.3d at 1219-1220. Second, the Sixth Circuit Court of Appeals concluded that an employer's failure to investigate

an employee's complaint that the employee's car was set on fire by a co-worker following the employee's complaint of discrimination was a materially adverse employment action. *See Hawkins*, 517 F.3d at 349.

Comparatively, courts have held that no material adverse employment action will be found for "fail[ing] to investigate what can be deemed run-of-the-mill harassment or mistreatment complaints, not threats like those in *Rochon* or *Hawkins*." *Kuhn v. United Airlines*, 63 F. Supp. 3d 796, 804 (N.D. Ill. 2014), *aff'd* 640 F. App'x 534 (7th Cir. 2016); *see Daniel v. ABM Indus., Inc.*, No. 16-CV-1300 (RA), 2017 WL 1216594, *12 (S.D.N.Y. Mar. 31, 2017). To be sure, plaintiff's complaints about Medina and Guzman—talking about sexual acts and sending sexual pictures—are serious and implicate conduct that no one should have to be exposed to unwillingly. However, those complaints had nothing to do whatsoever with serious acts of physical violence against plaintiff and therefore, contrary to plaintiff's claim, *see* Plaintiff Brf. at 10-12, amount to "run-of-the-mill harassment or mistreatment complaints," which cannot evince an adverse employment action, "not threats like those in *Rochon* or *Hawkins*," which could. *Kuhn*, 63 F. Supp. 3d at 804; *see Daniel*, 2017 WL 1216594 at *12.

In sum, contrary to plaintiff's claim, *see* Plaintiff Brf. at 9-18, the District

Court properly concluded that plaintiff did not suffer a material adverse employment action as a matter of law because, based on the undisputed factual circumstances here, no reasonable employee in plaintiff's position would have been dissuaded from complaining of unlawful discrimination based on defendants' failure to investigate plaintiff's complaints about Medina and Guzman. *See Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68-69; *Carr*, 76 F.4th at 180.

## II

### The District Court properly dismissed plaintiff's *Monell* claim

A plaintiff asserting a claim under *Monell* must establish: "(1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right." *Agosto v. New York City Dep't of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020).

The District Court properly held that plaintiff could not establish the elements of constitutional deprivation or the existence of any municipal policy or custom that gave rise to any purported constitutional deprivation. A. 1335-1342. The alleged constitutional deprivation serving as the predicate for plaintiff's *Monell* claim is her retaliation claim, alleging that Dr. Quezada

failed to adequately investigate her complaints against Medina and Guzman following her filing the Title IX complaint against Cassano. *See* Plaintiff Brf. at 19-28. However, given that the District Court's dismissal of plaintiff's retaliation claim must be affirmed for the reasons discussed, *see* Point I, *supra*, the District Court's dismissal of plaintiff's *Monell* claim must also be affirmed because there is no underlying constitutional violation to support such claim. And, even if plaintiff could rely on her retaliation claim as the predicate for her *Monell* claim, the District Court properly determined, contrary to plaintiff's claim, *see* Plaintiff Brf. at 19-28, that Dr. Quezada was not acting as a "final policymaker" for YPSD.

### A. The District Court properly determined that the dismissal of plaintiff's retaliation claims deprives plaintiff of the underlying constitutional violation to support her *Monell* claim.

As noted, an essential element of a claim under *Monell* is "the deprivation of a constitutional right." *Agosto*, 982 F.3d at 97. If a plaintiff's discrete claim for a constitutional violation is also used as the predicate for a *Monell* claim and the discrete claim is dismissed, it logically follows the *Monell* claim must also be dismissed because the essential element of an underlying constitutional violation is lacking. *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found

36

no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct").

Plaintiff's retaliation claim served as the underlying constitutional violation for plaintiff's *Monell* claim. *See* Plaintiff Brf. at 19-28. But, for the reasons discussed, *see* Point I, *supra*, the District Court's dismissal of plaintiff's retaliation claim should be affirmed. The District Court's dismissal of plaintiff's *Monell* claim, in turn, must also be affirmed because there is no underlying constitutional violation to support it. *See Segal*, 459 F.3d at 219.

The District Court's dismissal of plaintiff's *Monell* claim should be affirmed on this ground alone and the analysis should end here.

## B. The District Court properly determined that Dr. Quezada was not acting as a "final policymaker" for YPSD.

As noted, an essential element of a *Monell* claim is that the underlying constitutional violation was the result of "a municipal policy or custom." *Agosto*, 982 F.3d at 97. The existence of the "municipal policy or custom" element can be premised on, as is relevant here, the theory that a school district employee was acting as a "final policymaker." *See id.* at 98. Whether an employee is a final policymaker "is a legal question" that must "be answered on the basis of state law." *Id.* (internal quotation marks omitted).

Accordingly, to be considered a "final policymaker," state law must have afforded the employee "final policymaking authority in the particular area involved." *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000). Indeed, "[i]t does not suffice . . . that the [employee] ha[d] been granted discretion in the performance of his duties." *Id.*

Section 2554 of the New York Education Law, entitled "Powers and duties of board of education," provides that it is the board of education's "duty" to, among other things, "prescribe such regulations and by-laws as may be necessary . . . for the general management, operation, control, maintenance[,] and discipline of the schools." N.Y. Educ. Law § 2554(13)(a). Section 2566 of the New York Education Law, entitled "Powers and duties of superintendent of schools," provides that all of a superintendent's "powers" and "duties" are "subject to the by-laws of the board of education." N.Y. Educ. Law § 2556. That provision further specifies that the superintendent's powers and duties are subordinate to the final authority of the board of education. *See* N.Y. Educ. Law § 2556(2), (6). For example, although the superintendent has the duty "[t]o enforce all provisions of law and all rules and regulations relating to the management of the schools," that duty is still undertaken "under the direction of the board of education." N.Y.

Educ. Law § 2556(2). As another example, although the superintendent is tasked with "supervise[ng]" and "directi[ng]" certain school employees, such as teachers, the superintendent's supervision and direction are done "under the direction and management of the board of education." N.Y. Educ. Law § 2556(6). As a final example, the superintendent's role concerning employees' "violations of regulations and cases of insubordination" is limited to "report[ing]" such violations and cases to the "board of education," "until the next regular meeting of the board[ of education], when all facts relating to the case shall be submitted to the board[ of education] for its consideration and action." N.Y. Educ. Law § 2556(6).

In sum, the plain language of Sections 2554 and 2566 of the New York Education Law: (1) establishes that the board of education creates "the regulations and by-laws as may be necessary . . . for the general management, operation, control, maintenance[,] and discipline of the schools"; (2) makes the superintendent's powers and duties "subject to" the by-laws created by the board of education; (3) requires the superintendent's enforcement and supervisory duties to be completed "under the direction" of the board of education; and (4) restricts the superintendent's investigatory role to "report[ing]" regulatory violations to the board of education, which

will then "consider[]" and take any necessary final "action." *See Spadaro v. U.S. Customs & Border Prot.*, 978 F.3d 34, 46 ("When interpreting a statute, we begin with the plain language of the statute, giving the statutory terms their ordinary or natural meaning" (internal quotation marks omitted)).

That statutory backdrop plainly evidences that it is the board of education, as the body creating the by-laws and regulations, that is vested with "final policymaking authority" on virtually all areas, including setting policy for investigation of harassment. *Jeffes*, 208 F.3d at 57. Given that Dr. Quezada, as superintendent, acts "subject to" the board of education and merely "reports" and "submits" issues, including issues of sexual harassment, to the board of education for its final "consideration and action," it cannot possibly be said that the New York State Education Law vests Dr. Quezada with the "authority to adopt rules" for YPSD's investigation of harassment. *Agosto*, 982 F.3d at 98 (internal quotation marks omitted). At best, Dr. Quezada may be vested with the authority to decide whether to investigate a claim of harassment, but that decision-making authority does not equate to the authority to make final policy for investigating harassment, which is statutorily prescribed to the Board of Education. *See Hurdle v. Bd. of Educ. of City of New York*, 113 F. App'x 423, 427

40

(2d Cir. 2004) (summary order) ("Even if Romandetto was the *decisionmaker* with regard to Hurdle's transfer, that does not establish that she had the authority to set the policy authorizing involuntary employee transfers" (emphasis in original)).

Thus, contrary to plaintiff's claim, *see* Plaintiff Brf. at 19-28, the Supreme Court properly determined that Dr. Quezada was not a "final policymaker." *See Agosto*, 982 F.3d at 97-98.[4]

---

[4] Plaintiff's heavy reliance on caselaw discussing the power of the New York City Chancellor of Schools, *see* Plaintiff Brf. at 21-22, is inapt because the New York State Education Law expressly acknowledges that the New York City Chancellor of Schools and a school superintendent, such as Dr. Quezada, are different positions that have separate and distinct statutorily delineated powers and authority. *Compare* N.Y. Ed. Law § 2566 (school superintendents), *with* § 2590-h (New York City Chancellor of Schools).

## CONCLUSION

For these reasons, the judgment appealed from should be affirmed.

**ABRAMS FENSTERMAN, LLP**
*Attorneys for Defendants-Appellees*
*Yonkers Public School District and Dr. Edwin M. Quezada*

By: *_/s/ Joanna M. Topping, Esq_.*
Joanna M. Topping
81 Main Street, Suite 400
White Plains, New York 10601
(914) 607-7010

Dated: White Plains, New York
        November 12, 2024

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limit, Typeface Requirements and Type-Style Requirements.

    1. This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f): this document contains 8,330.

    2. This document complies with the typeface requirements of Fed. S. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word (2019/Office) in 14-point font, Times New Roman.

Dated: November 12, 2024

                              **ABRAMS FENSTERMAN, LLP**
                              *Attorneys for Defendants-Appellees*
                              *Yonkers Public School District and Dr.*
                              *Edwin M. Quezada*

                              By: *s/ Joanna M. Topping, Esq.*
                              Joanna M. Topping
                              81 Main Street, Suite 400
                              White Plains, New York 10601
                              (914) 607-7010